In the Matter of DAVID FRIEDMAN. COMMISSIONER OF SOCIAL SERVICES OF THE CITY OF NEW YORK, Appellant; FREIDA FRIEDMAN et al., Respondents.

First Department, January 12, 1982

**APPEARANCES OF COUNSEL**

*Joan E. Handler* of counsel (*Francis F. Caputo* with her on the brief; *Allen G. Schwartz, Corporation Counsel,* attorney), for the appellant.

*Gary R. Connor* of counsel (*Andrea C. Levine* on the brief; *Arnold Rothbaum,* attorney), for respondent.

*Robin L. Faine* of counsel (*Lenore Gittis,* attorney), for the Legal Aid Society representing the child.

**OPINION OF THE COURT**

KUPFERMAN, J. P.

We have here the question of the custody of the subject child, David, born in 1966, wherein there is a dispute between the mother and her parents.

The mother obtained custody of David and his older sister at the time of her divorce. Her husband is not involved in this situation.

The mother, with a history of emotional problems, has strong conflicts, especially religious, with her parents who are extremely orthodox in their view.

Because of her inability to care for the children, the mother, in October, 1978, voluntarily placed them with the Commissioner of Social Services of the City of New York who, in turn, transferred custody to a voluntary foster care agency[1] which, in turn, placed David in a foster home in Rockland County. It appears that the grandparents, residents of Boro Park, in Brooklyn, in the summer of 1979, removed David from the foster home without the mother's approval and took him to Canada. The Family Court directed that he be returned to foster care and, at the Judge's suggestion, a rabbinical court reviewed the matter and agreed with that conclusion. David was in a foster home in a Hassidic community from December, 1979 until June, 1981. At that time, he returned to his mother's home in Williamsburgh, in Brooklyn, claiming both that he had been asked to leave the foster home and that he no longer wished to remain there.

The mother then asked that the supervision of his care be transferred to a different Jewish agency, which was done, and he was placed in a religious summer camp. He remained there until the middle of the summer of 1981, when he left camp without permission of either the camp officials or his mother. His whereabouts were unknown until September, when he came to the home of the grandparents.

In the interim, the mother brought a habeas corpus petition in the Family Court against the commissioner, the home and her parents, alleging a conspiracy to remove David from the camp. The grandparents alleged that they did not know of David's whereabouts. However, later in the month they brought David to court at which time Justice RAND of the Family Court, who had been handling the matter, directed that David remain with the grandparents.

Thereafter, the commissioner brought on a petition requesting that David be placed with the grandparents be-

1. The agency involved, Mishkon B'nai Yisroel, recently had its contract terminated by the Human Resources Administration. (See *New York Times,* Nov. 25, 1981, B1, col 4.)

cause of his poor adjustment to foster care, his age of 15, his desire to remain with the grandparents and the grandparents' willingness to care for him. The petition requested that the mother be given visitation rights. It should be noted that the grandparents would be supporting David at their own expense, which would not be the case if David continued in foster care.

After a hearing before Justice MARKS in the Family Court, at which caseworkers and the parties testified, Justice MARKS entered the placement order now on appeal. She made findings of fact that the mother was unable to care for the child[2], that foster care should not be ended simply because the child runs away, that only the foster agency could provide objective care and therapy and that the grandfather and grandmother could not be relied on to keep their promises and that, therefore, a continuation of foster care was necessary.

The order should be modified and the child should be discharged to the care and custody of the grandparents. However, the court's determination that therapy for the child was necessary and that the mother should be given visitation, should be affirmed. With respect thereto, there should be a remand so that therapy and visitation can be examined with a view towards providing for these requirements in conjunction with the grandparents' custody, inasmuch as the therapy and visitation, previously directed, were in the foster home setting.

The only real objection to placement of the child with his grandparents is made by the mother because of her conflict with her own parents, which seems to be due to their orthodox beliefs as against her more worldly approach. However, there is no indication that they are, otherwise, unfit to receive their grandchild, who has expressed his desire to live with them and to follow their religious beliefs. At the age of 15, while he cannot make the determination, his thoughts on the matter have value. That grandparents may have the ability to make a substantial contribution has been recognized even in a dispute be-

---

2. David's older sister has been at a Yeshiva in England and at one point, the mother asked the foster home to pay her travel expense to England in order to visit the child which request of course, was not granted.

tween natural grandparents and adoptive parents. (See *People ex rel. Sibley v Sheppard,* 54 NY2d 320.)

The finding by the court that the grandparents could not be believed undoubtedly had to do with the question of David's disappearance from camp and his return to the grandparents and also with the question of their attitude toward their daughter, who should be permitted visitation under proper conditions.

The fact that David has escaped from foster care and has not successfully adapted to that kind of environment, indicates that placement with strangers, at taxpayers' expense, at the whim of the mother, will not be helpful to him.

The order of the Family Court, New York County, entered September 21, 1981 (MARKS, J.), which modified an order of the Family Court, New York County, entered June 16, 1981 (RAND, J.), which placed the child, David, in foster care, to the extent of extending such placement until June 30, 1982, allowing visitation by the grandparents, as deemed suitable by the agency, allowing the mother weekly visits and providing for therapy for the child, should be reversed on the law, the facts and in the exercise of discretion, to the extent of granting the petition to discharge David to his grandparents, and to the extent that the order provides for the weekly visits for the mother and therapy for David, it should be modified to remand for a further hearing to provide for such visitation and therapy in conjunction with the new placement, without costs.

SANDLER, ROSS, CARRO and FEIN, JJ., concur.

Order, Family Court, New York County, entered on September 21, 1981, unanimously reversed, on the law, the facts and in the exercise of discretion to the extent of granting the petition to discharge David to his grandparents, and to the extent that the order provides for the weekly visits for the mother and therapy for David, said order is modified to remand for a further hearing to provide for such visitation and therapy in conjunction with the new placement, without costs and without disbursements.